UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRESNO DIVISION

| | |
|---|---|
| **ANGEL TANGUMA MEDINA,** | CASE NO. 08cv0545-JLS(BLM) |
| Petitioner, | **ORDER DENYING 28 U.S.C. § 2254 PETITION FOR WRIT OF HABEAS CORPUS** |
| vs. | |
| **JAMES E. TILTON,** | |
| Respondent. | |

Angel Tanguma Medina ("Medina"), a state prisoner proceeding with the assistance of counsel, seeks a 28 U.S.C. § 2254 writ of habeas corpus. Medina is serving a life sentence plus four years with the possibility of parole following his convictions for attempted forcible rape, kidnapping to commit rape, and assaults with a deadly weapon. His federal Petition alleges violations of his due process and fair trial rights through prejudicial misjoinder of separate offenses and insufficient evidence to support the kidnapping charge. Respondent filed an Answer (Dkt No. 13), and Medina filed a Traverse (Dkt No. 15). By Order entered November 25, 2008, this matter was reassigned from the bench of the

United States District Court for the Eastern District of California to visiting District Judge Janis L. Sammartino, United States District Court for the Southern District of California.[1] (Dkt No. 16.) After consideration of the parties' arguments, pertinent portions of the record, and controlling authority, for the reasons discussed below, the Petition is **DENIED**.

## I.     BACKGROUND

In its January 31, 2007 unpublished opinion, the California Court of Appeal affirmed the judgment against Medina following his convictions by a jury in a September 2005 trial on consolidated charges arising from two separate incidents. (Resp. Lodg. 1; Pet. Lodg 1, Clerk's Transcript ("CT") Vol. 1, 155-159 (Amended Information).) One incident involved a fight with two men (William Manson and Francisco Medina, unrelated to defendant Medina) in a parking lot about 6:00 p.m. on October 26, 2002, and the second involved an attempted rape of a woman ("Stella") at about 9:30 p.m. the same night. This Court applies the statutory presumption of correctness to the state court's factual findings. 28 U.S.C. § 2254(e)(1).

### I.     The Fight

After a workout at a gym, William Manson and Francisco Medina went to Francisco Medina's vehicle to look at some pictures. While in the parking lot, Manson heard some yelling but could not understand what was being said. When Manson stepped away from the vehicle, he discovered the person yelling was challenging him to a fight. Manson approached the man who was yelling, Medina.

Manson told Medina that if he wanted to fight, then to throw the first punch. Medina approached and took Manson to the ground in a wrestling move. When the two stood up, Medina pulled out a knife. Manson started backing away. Medina either swung the knife around or lunged at Manson with the knife. Manson and Francisco Medina kept backing away. Someone then yelled that the police had been called. Medina got in his vehicle and left. [FN 2: "The testimony of the other witnesses to the incident essentially was consistent."]

Officer John Willow responded to a report of a possible assault with a deadly weapon. He met the victim, Manson, and three witnesses, Francisco Medina, Ronnie Potter, and Sherry Potter. The

---

[1] Both Petitioner and Respondent consented to the jurisdiction of a United States Magistrate Judge for all purposes, and a Magistrate Judge in the Eastern District was assigned prior to the transfer of this matter to the Southern District. (Dkt Nos. 5, 11, 12.) The Order Reassigning Case To Visiting Judge expressly withdrew the Magistrate Judge assignment. (Dkt No. 16.) "[R]eference to a magistrate judge is entirely discretionary." Dawson v. Marshall, 561 F.3d 930, 933 (9th Cir. 2009), *citing* 28 U.S.C. § 636(b)(1)(A)-(B). "The litigant has no right to a magistrate judge but only to an Article III judge." Id.

witnesses provided Willow with a possible license plate number and a description of the assailant's vehicle. Medina was identified as one of the registered owners of the pickup. A photo lineup that included Medina was shown to the witnesses. Each witness identified Medina as the assailant.

The next day Willow discovered Medina was incarcerated in the Fresno County Jail on unrelated charges. Willow interviewed Medina, who admitted the assault but stated that it was instigated by Manson and Francisco Medina. Medina claimed the two men kept approaching him and, even though he did not want to fight, he took one of the men down to the ground in a wrestling move. When Medina stood up, he pulled his knife to ensure the fight did not escalate. Medina then got into his vehicle and left the scene.

## II.    Attempted Rape

Later that same night, Stella [fn omitted] finished her janitorial job and began walking home. She stopped for dinner and spoke with a friend at a local restaurant. When she continued her journey home, she saw a burgundy-colored car with black tinted windows pass her twice. The car parked on a side street and a young man got out of the car and asked Stella if she could "get it up." Stella identified the young man as Medina. Stella told Medina that she did not work the streets. He apologized and started to walk away.

A few moments later Medina turned toward Stella with a knife and started pulling her purse. Medina let go of the purse, got behind Stella, grabbed her around the neck, and put the knife to her neck. Medina dragged her by her hair towards a dark area. A truck drove into and out of the parking lot of the strip mall where the attack was occurring, despite Stella's request for help. Medina continued dragging Stella to a dark area away from some lights that were illuminating the area.

Stella told Medina that she would do anything he wanted so long as he did not hurt her. Medina told her to take off her clothes. Stella started to do so, then changed her mind and began struggling with Medina. Medina had the knife in his hand during the struggle. Medina pulled Stella to an area with a brick wall and banged her head against the wall. Medina said he was going to kill her if she did not do what he wanted. Stella screamed for help. Stella's hand was cut by the knife during the struggle. Stella saw the police car across the street and began screaming louder. Medina came towards Stella looking like he wanted to kill her. Medina started to unbuckle his pants. Stella continued to struggle with Medina until the police showed up.

Officer Timothy Stewart was on patrol that night. He and his partner both heard a loud scream that sounded pretty bad. They looked in the direction of the scream but could not see anything. They then heard a second scream that was even louder than the first. When Stewart looked in the direction of the scream he could see some people in the back corner of the strip mall. It was dark and hard to see the two subjects. Stewart initially could not tell if the subjects were male or female. Stewart's partner drove the police car into the parking lot. The

> headlights of the vehicle illuminated Medina walking away from the second person. When Stewart got out of the vehicle, Medina ran away. He jumped over a fence that had barbed wire at the top. Medina's shirt got caught in the barbed wire and tore. Steward gave chase and observed him get into a vehicle and depart at a high rate of speed. Steward did not see a knife at any time that evening.
>
> Stewart returned to Stella to find out what had occurred. Stella stated she had been stabbed and an ambulance was called. She had bumps on her head and some of her hair had been pulled out. The area was searched but the officers did not find a knife. Stewart identified Timothy Mobley as a potential witness.
>
> Medina's vehicle was stopped a short time later by different officers. The officers told Stella they had caught Medina and asked her if she could identify him while she was waiting for paramedics to arrive. Stella said she could and identified Medina when he was returned to the scene.
>
> As a result of the attack, Stella had cuts on her hand, her head, her thumb, and a bald spot on the back of her head where Medina had pulled out her hair.

(Resp. Lodg. 1, Unpublished Opinion, pp. 2-5.)

As summarized in Respondent's Motion For Joinder, Medina was arraigned on October 29, 2002 in Case No. F02906734-9[2] in Fresno County Superior Court, charged with four counts: attempted murder; attempted rape; kidnapping with intent to commit rape; and assault with a deadly weapon (knife). He was arraigned on October 31, 2002 in Case No. F02906746-3, charged with two counts: assault with a deadly weapon (knife); and brandishing a weapon. (Resp. Lodg. 3, CT Vol. 1, 083-084.) A six-count Amended Information consolidated the charges: Count 1, the attempted murder of Stella (CAL. PEN. CODE §§ 187(a), 664), with personal use of a deadly weapon (CAL. PEN. CODE § 12022(b)(1)), a serious felony within the meaning of CAL. PEN. CODE § 1192.7(c)(23) and with the infliction of great bodily injury within the meaning of CAL. PEN. CODE § 12022.7(a), a serious felony within the meaning of CAL. PEN. CODE § 1192.7(c)(8) and a violent felony within the meaning of CAL. PEN. CODE § 667.5(c)(8); Count 2, attempted forcible rape (CAL.

---

[2] Some inconsistency in the case number citations appears in some of the Lodgments and Petition filings, even within the same document, suggesting typographical error (*see, e.g.*, Motion For Joinder, where the DA File No. 2002S37426 is occasionally condensed with the Superior Court case number F02906734-9, or final digits are transposed, as in the caption for that Motion, or the Court of Appeal case number F049235 is used; *see also* inconsistent case number citations in Medina's Opposition to Motion For Joinder at p. 4). The correct consolidated Superior Court case number is F02906734-9.

PEN. CODE §§ 261(a)(2), 664), with the enhancements of CAL. PEN. CODE §§ 12022.3(a) (use of a knife), 1192.7(c)(23), and 12022.8 (infliction of great bodily injury); Count 3, kidnapping to commit rape (CAL. PEN. CODE § 209(b)(1)), with the enhancements of CAL. PEN. CODE §§ 12022(b)(1), 1192.7(c)(23), 12022.7(a), 1192.7(c)(8), and 667.5(c)(8); Count 4, felony assault with a deadly weapon in the attack on Stella (CAL. PEN. CODE § 245(a)(1)), a serious felony under CAL. PEN. CODE § 969f, within the meaning of CAL. PEN. CODE § 1192.7(c)(23), with the enhancements of CAL. PEN. CODE §§ 12022.7(a), 1192.7(c)(8), and 667.5(c)(8); Count 5, felony assault with a deadly weapon on William Manson (CAL. PEN. CODE § 245(a)(1)); and Count 6, misdemeanor assault with a deadly weapon on Francisco Medina (CAL. PEN. CODE § 245(a)(1)). (Pet. Lodg. 1, CT Vol. 1, 155-159.)

The trial lasted a total of nine days. (Pet. Lodg. 1, CT Vol. 1, 161-175, 201-204, 379-380.) The jury deadlocked on the attempted murder count, and the court declared a mistrial. The People dismissed that count in the interests of justice. (Resp. Lodg. 1, p. 5; Pet. Lodg. 1, CT 378.)

> The jury acquitted Medina of the assault against Francisco Medina. The jury convicted Medina of the remaining charges and found all the enhancements true. [¶] Medina received a life term with the possibility of parole for the kidnapping, plus four years for the section 12022.7, subdivision (a) and section 12022, subdivision (b)(1) enhancements. The assault with a deadly weapon count against Manson was reduced to a misdemeanor (§ 17, subd. (b)), and Medina was given credit for time served. The sentences on the remaining counts were imposed either concurrently or stayed (§ 654).

(Resp. Lodg. 1, pp. 5-6; *see* Pet. Lodg. 1, CT Vol. 2, 381-395; Pet. Lodg. 2, Reporter's Transcript ("RT") 2115-2116.)

Medina appealed, alleging: (1) the trial court erred in consolidating the two cases; (2) he received ineffective assistance of counsel; and (3) the aggravated kidnapping count was not supported by substantial evidence. The Court of Appeal affirmed the judgment. (Resp. Lodg. 1.) The California Supreme Court summarily denied his Petition For Review on April 27, 2007, without discussion or citation to authority. (Resp. Lodg. 2.) Medina does not appear to have pursued habeas corpus relief in the state courts. His federal habeas Petition, filed April 18, 2008, alleges two grounds for relief: joinder of the two cases unduly prejudiced him and rendered the trial fundamentally unfair; and the evidence was insufficient to support the CAL. PEN. CODE § 209(b)(2) conviction for kidnapping with intent to commit rape.

## II. DISCUSSION

### A. Legal Standards On Habeas Corpus Review

A federal court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.A. § 2254(a). Only errors of federal law can support federal intervention in state court proceedings. Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989). Federal habeas courts are bound by states' interpretations of their own laws. Himes v. Thompson, 336 F.3d 848, 852 (9th Cir. 2003); Estelle v. McGuire, 502 U.S. 62, 68 (1991) (federal courts may not reexamine state court determinations on state law issues).

Federal habeas petitions filed after April 24, 1996 are governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S. C. § 2244(d)(1). AEDPA establishes a "highly deferential standard for evaluating state-court rulings," requiring "that state-court decisions be given the benefit of the doubt." Woodford v. Visciotti, 537 U.S. 19, 24 (2002). Federal courts must presume the correctness of a state court's factual determinations unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). A federal court can grant a state prisoner habeas relief only if it determines the result of a claim adjudicated on the merits by a state court "was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see* Bell v. Cone, 535 U.S. 685, 694 (2002); Miller-El v. Cockrell, 537 U.S. 322, 340 (2003) (a state court's adjudication on the merits "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding").

"[C]learly established federal law" refers to "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision"against which to measure a state court decision for 28 U.S.C. § 2254(d)(1) "contrary to" or "unreasonable application" analysis. Lockyer v. Andrade, 538 U.S. 63, 64-65, 76 (2003); *see also* Bradley v. Duncan, 315 F.3d 1091, 1101 (9th Cir. 2002) (relevant Supreme Court precedents "include not only bright-line rules but also the

legal principles and standards flowing from such precedent"), *quoting* Williams v. Taylor, 529 U.S. 362, 407 (2000). A state court's decision is "contrary to" clearly established federal law if it (1) applies a rule that contradicts governing Supreme Court authority, or (2) it "confronts a set of facts . . . materially indistinguishable from" a Supreme Court decision but reaches a different result. Early v. Packer, 537 U.S. 3, 8 (2002). To be found "unreasonable," the application of the precedent "must have been more than incorrect or erroneous;" the application "must have been 'objectively unreasonable.' " Wiggins v. Smith, 539 U.S. 510, 520-21 (2003) (citation omitted); *see also* Middleton v. McNeil, 541 U.S. 433, 436 (2004) (*per curiam*). A petitioner may also be entitled to habeas relief if the state court's factual determination rests on an unreasonable evidentiary foundation. 28 U.S.C. § 2254(d)(2); Gonzalez v. Pliler, 341 F.3d 897, 903 (9th Cir. 2003).

A federal habeas court applying those standards looks to the last reasoned state court decision. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008); *see* Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991) (when there is no reasoned decision from the state's highest court, the federal court "looks through" to the rationale of the underlying decision). Only the California Court of Appeal on direct review reached the merits of Medina's federal claims in a reasoned decision. (Resp. Lodg. 1.) The denial of a petition by the state's highest court "without comment or citation constitute[s] a decision on the merits of the federal claims," and "thus such claims [are] subject to review in federal habeas proceedings." Hunter v. Aispuro, 982 F.2d 344, 347-48 (9th Cir. 1992). There is no dispute Medina's claims are exhausted and were timely presented in his federal Petition filed within AEDPA's one-year statute of limitations. 28 U.S.C. § 2244(d)(1).

**B.     Joinder Of Cases Did Not Violate Medina's Federal Constitutional Rights**

California's pleading rules provide, in pertinent part:

> An accusatory pleading may charge **two or more different offenses connected together in their commission**, or different statements of the same offense **or two or more different offenses of the same class of crimes or offenses**, **under separate counts, and if two or more accusatory pleadings are filed in such cases in the same court,** the court may order them to be consolidated. . . .

CAL. PEN. CODE § 954(emphasis added).

\\

- 7 -                                                         08cv0545-JLS(BLM)

Respondent's joinder motion was argued on February 26, 2003. (Pet. Lodg. 3, RT Augmentation Record.) Relying on California case law interpreting the "of the same class" and "connected together in their commission" language of the joinder statute, Respondent argued:

> The assault of Mr. Mason, Mr. Francisco Medina and Jane Doe are all from the same class of crimes. In each case the defendant has been charged with a violation of Penal [C]ode Section 245(a)(1). In each case the defendant is seen with the same or similar knife. It is only a matter of hours between each event. In each case [t]he defendant confronts a stranger and during the confrontation he exhibits and assaults these individuals with a folding knife with a blade of approximately three inches.

(Resp. Lodg. 3, CT Vol. 1, 089.)

Medina's counsel conceded "that statutorily the People can join these two cases" (Id. at RT 7, 10), but argued for severance on grounds of prejudice. Both Respondent and Medina relied on the same California authority elaborating the "substantial prejudice" analysis associated with joinder and severance issues. Several considerations inform the prejudice analysis under state law.

> Refusal to sever may be an abuse of discretion where: (1) evidence on the crimes to be tried jointly would not be cross-admissible [under CAL. EVID. CODE § 1101] in separate trials; (2) certain of the charges are unusually likely to inflame the jury against the defendant; (3) a "weak" case has been joined with a "strong" case, or with another "weak" case, so that the "spillover" effect of aggregate evidence on several charges might well alter the outcome of some or all of the charges. . . .

People v. Carter, 36 Cal.4th 1114, 1155 (2005), *quoting* People v. Sandoval, 4 Cal.4th 155, 172-73 (1992).

The Superior Court exercised its joinder discretion, ruling in pertinent part:

> Court's going to find that both cases do involve assault with a knife, and both could have been or have taken place around the same time. I believe that certainly consolidation is within the Court's discretion. I tend to agree with the prosecutor that this isn't really so much a weak case by the determination that it is a misdemeanor, I think that it simply means that it may not rise to the level of a felony. But as far as . . . what is going to be in evidence, at least from what we have so far, it is not necessarily a weak case as it tends to prove the misdemeanor conduct.

(Pet. Lodg. 3, RT 17.)

A California trial court's denial of severance is reviewed on appeal for abuse of discretion. A defendant must make a clear showing of prejudice in order for a reviewing court to disturb the joinder.

Carter, 36 Cal.4th at 1153 ("The determination of prejudice is necessarily dependent on the particular circumstances of each individual case"), *quoting* Sandoval, 4 Cal.4th at 172. The Court of Appeal first addressed the consolidation challenge applying the abuse of discretion standard. (Resp. Lodg. 1, p. 6 (observing, with citations to California law, the preference to join charges in one action, and noting "[a] defendant can prevent consolidation of properly joined charges only with a 'clear showing of prejudice' "). The Court of Appeal concluded the "offenses consolidated in this case, attempted murder, rape, and assault with a deadly weapon, are assaultive crimes against the person, are of the same class, and are properly joined." (Resp. Lodg. 1, pp. 6-7, *citing* People v. Alvarez, 14 Cal.4th 155, 188 (1996) ("a conclusion as to whether two or more offenses are properly joined under Penal Code section 954 is examined independently as the resolution of a pure question of law – whether the offenses are . . .'of the same class of . . . offenses' (Pen. Code § 954) -- or the resolution of a predominantly legal mixed fact-law question – whether the offenses were 'connected . . . in their commission' ").) A federal habeas court will not disturb state courts' resolutions of state law questions. Estelle, 502 U.S. at 67. "By contrast, a determination as to whether separation is required in the interests of justice is assessed for abuse of discretion," a determination whose prejudice prong can raise due process concerns in some circumstances. Alvarez, 14 Cal.4th at 188.

        The Court of Appeal then applied abuse of discretion standards in reliance on California case law to find no prejudice from the consolidation in Medina's case. (Resp. Lodg. 1 p. 10.) The court and the parties relied, *inter alia*, on the three pertinent factors discussed in Sandoval, 4 Cal.4th at 172-73, citing People v. Kraft, 23 Cal.4th 978, 1030 (2000), with the court noting the prejudice analysis is the same on appeal from a ruling on a motion to sever counts as on a ruling to consolidate separate complaints, citing People v. Ochoa, 19 Cal.4th 353, 408-09 (1998) (Resp. Lodg. 1, p. 7.) The court distinguished Calderon v. Superior Court, 87 Cal.App.4th 933 (2002), Medina's primary authority in support of his prejudice argument. (Resp. Lodg. 1, pp. 7-9.) The Calderon case represented "a classic example of a defendant whose right to an impartial jury likely would be impacted negatively by being tried jointly with a more culpable codefendant." (Resp. Lodg. 1, p. 9.) "Medina is not in the same position," and the "facts presented in this case are much different." Id. The Court of Appeal reviewed the prejudice considerations and found no abuse of discretion in the consolidation, emphasizing among

other things: Medina was the only perpetrator in both incidents; the evidence in both cases was strong, "even overwhelming"; his identity was not contested, based on eyewitness testimony and forensic evidence"; his intent was the only issue in each case; although one assault occurred in the afternoon and one at night, they were separated by only a few hours; he was the aggressor in each and used a knife in each; although the knife was never recovered, his use of a knife in the first assault "would have been probative of whether Medina brought a knife to the second assault, and thus admissible as evidence of his plan or method of operation," citing CAL. EVID. CODE § 1101(a); the crimes were not of a type unusually likely to inflame a jury's passions; and there was no potential for a spillover effect between the two cases detrimental to Medina, as evidenced by the jury's deadlock on the attempted murder count, the not guilty verdict on the assault against Francisco Medina charge, and the absence of any factual support for his self-defense claim in the afternoon incident.  (Resp. Lodg. 1, p. 9-10.)

In his federal Petition, Medina nevertheless argues "the spillover effect of the aggregate evidence from the day-time contest of machismo and the night-time assault on the lone woman made it impossible for the jurors to compartmentalize the evidence between the cases."  (Pet. pp. 49-50.) He attempts an abuse of discretion demonstration relying on *federal procedural* rules (Pet. pp. 19-25), in particular Federal Rule of Criminal Procedure 8(a), as the standard this Court should apply to decide this issue.  "In contrasting the federal rules governing joinder with the cases analyzing improper joinder from California, it's obvious that the federal standards impose a simpler, yet more stringent requirement for joinder that could not be met in the instant case."[3]  (Pet. pp. 24-25.)  He concludes: "Joinder was improper in the instant case *when analyzed under a federal context,* and that joinder served to unduly prejudice Petitioner in the eyes of the jury, thereby denying him his right to a fair trial based on due process of law."  (Pet. p. 33 (emphasis added).)

However, no such "federal context" analysis is appropriate on federal habeas review of a state conviction.  Distinctions between federal and state procedural rules in criminal prosecutions do not

---

[3] Counsel relies on United States v. Jawara, 462 F.3d 1173 (9th Cir. 2006) as exemplifying "a sparkling analysis of what constitutes proper and improper joinder under the federal rules."  (Pet. p. 24.)  However, not only was Jawara an appeal from a United States District Court conviction, but also that opinion was amended and superseded on denial of rehearing, procedural history counsel failed to signal.  *See* United States v. Jawara, 474 F.3d 565 (2007).

inform constitutional review of state prisoners' custody. *See* 28 U.S.C. § 2254(d). Moreover, even assuming error under state law, the United States Supreme Court has "stated many times that 'federal habeas corpus relief does not lie for errors of state law.'" Estelle, 502 U.S. at 67 *quoting* Lewis v. Jeffers, 497 U.S. 764, 780 (1990); *see* Featherstone v. Estelle, 948 F.2d 1497, 1503 (9th Cir. 1991). The Court disregards Medina's inapposite argument and authority relying on federal procedural rules. *See, e.g.*, Pet. at 49 ("Considering the factors listed in Federal Rules of Criminal Procedure Rule 8(a), it was an abuse of the trial court to refuse to sever the cases against Petitioner").

Medina also contends the misjoinder "error" resulted in a consequence "evidence was allowed in at trial" that had no value as to the charges stemming from the night time incident other than to unduly prejudice Petitioner in the eyes and minds of the jury." (Pet. p. 37.) Contrary to the Court of Appeal's express finding of cross-admissibility of evidence applying California evidence rules, Medina summarily argues: "The evidence from the two cases would not have been cross-admissible, and because of the obvious 'spillover' effect of the evidence from the two cases (seized by the prosecution in his closing argument), the trial court abused its discretion in joining the cases." (Id.) In conclusory argument, he states: "Petitioner was actually prejudiced by the joinder of the two cases, which, by allowing impermissible inferences and speculation on the part of the jury, had a substantial and injurious effect and influence in determining the verdict," so that the error "affected the very structure of the trial and therefore was fundamentally unfair." (Id. pp. 37-38.)

Respondent contends there is no United States Supreme Court authority on the question whether misjoinder under state law rules may offend the United States Constitution, foreclosing federal habeas relief on this theory.[4] (Answer p. 9.) Even assuming improper joinder could be

---

[4] "Petitioner fails to show some direct precedent from the Supreme Court clearly establishing a rule that joinder of charges may offend some principle so fundamental as to amount to a denial of due process," a "fatal" flaw "in this AEDPA-governed case." (Answer 8:14-16.) Respondent contends Lane does not provide support for Medina's misjoinder claim in reliance on a recent unpublished Ninth Circuit opinion noting: "*Lane* considered only the effect of misjoinder under Federal Rule of Criminal Procedure 8, and expressly stated that no constitutional claim had been presented," citing Lane, 474 U.S. at 438, 446, & n.9, observing "*Lane*'s broad statement – found in a footnote without citation to any legal authority – that misjoinder could only rise to the level of a constitutional violation if it was so prejudicial as to violate due process, was probably dictum." (Answer 9, 9:1-6, *quoting* "Young v. Pliler, 2008 U.S.App.Lexis 8340, *1 n.1 (9th Cir. [Apr. 15,] 2008) (unpub.)." Nevertheless, the Young court, deciding a 28 U.S.C. § 2254 habeas petition, reached the merits of the petitioner's claim the joinder for trial of a murder charge and assault charges in state court violated his constitutional due process rights, "assuming that United States v. Lane provides the relevant Supreme Court

1  unconstitutional in some instances, and even if the state court incorrectly applied state joinder law,
2  Respondent argues Medina fails to show the state court's joinder decision was objectively
3  unreasonable in his circumstances, not merely incorrect, foreclosing federal habeas relief. (Id.)

4  "Improper joinder does not, in itself, violate the Constitution." United States v. Lane, 474
5  U.S. 438, 446, n.8 (1986). Moreover, even if constitutional error occurred, that "fact does not end
6  our examination," because "[e]xcept in certain circumstances, to find relief on collateral review, a
7  federal habeas petitioner must show that the error resulted in actual prejudice." Gonzalez v. Pliler,
8  341 F.3d 897, 903 (9th Cir. 2003), *citing* Lane, 474 U.S. at 449. "[M]isjoinder would rise to the level
9  of a constitutional violation only if it results in prejudice so great as to deny a defendant his Fifth
10 Amendment right to a fair trial." Lane, 474 U.S. at 446, n.8 (reversing the overturning of the
11 petitioner's convictions on improper joinder grounds, holding even though joinder was improper, the
12 error was harmless). Error "involving misjoinder 'affects substantial rights' and requires reversal only
13 if the misjoinder results in actual prejudice because it 'had substantial and injurious effect or influence
14 in determining the jury's verdict.'"[5] Id. at 449, *quoting* Kotteakos v. United States, 328 U.S. 750, 776
15 (1946). Although Lane involved review of federal convictions applying federal rules of criminal
16 procedure, the constitutional principle applies to the right of all criminal defendants to a fair trial.

17 This Court is bound by Ninth Circuit authority on a controlling legal issue. Hart v. Massanari,
18 266 F.3d 1155, 1170 (9th Cir. 2001). Federal habeas relief is available for improper consolidation
19 only if the "simultaneous trial of more than one offense . . . actually render[ed] petitioner's state trial
20 fundamentally unfair and hence, violative of due process." Featherstone, 948 F.2d at 1503 (citation
21 omitted); *see* Davis v. Woodford, 384 F.3d 628, 638 (9th Cir. 2004). "Respondent acknowledges that
22 Davis . . ., a post-AEDPA federal habeas case, articulates a standard for habeas relief very similar to
23 that found in Lane." (Answer 9:12-14; *see* Traverse 9:12-15 (concurring that case "articulates the
24 appropriate standard for relief under AEDPA" on the joinder issue.)

---

26 precedent," and denied habeas relief. Young v. Pliler, 273 Fed.Appx. 670, 672 (9th Cir. 2008). This Court assumes the same in reaching the merits of Medina's misjoinder claim.

27 [5] Medina acknowledges the Lane and Kotteakos principle that improper joinder does not in itself
28 violate the Constitution, but rather the prejudice from misjoinder, if misjoinder there was, must be so great as impinge the Fifth Amendment right to a fair trial. (Traverse 5:4-16.)

> The requisite level of prejudice is reached only "if the impermissible joinder had a substantial and injurious effect or influence in determining the jury's verdict." Sandoval, 241 F.3d at 772 (citing Bean v. Calderon, 163 F.3d 1073, 1086 (9th Cir. 1998)). In evaluating prejudice, the Ninth Circuit focuses particularly on cross-admissibility of evidence and the danger of "spillover" from one charge to another, especially where one charge or set of charges is weaker than another.

Davis, 384 F.3d at 638 (denying federal habeas relief and finding, *inter alia*, capital charges were not impermissibly joined with non-capital charges, and sufficient evidence supported the conviction), *quoting* Sandoval v. Calderon, 241 F.3d 765, 771-72 (9th Cir. 2000) (there is no prejudicial constitutional violation unless "simultaneous trial of more than one offense . . . actually render[ed] petitioner's state trial fundamentally unfair and hence, violative of due process").

Medina fails to demonstrate the state courts unreasonably concluded he was not prejudiced by joinder of the charges from the separate incidents in a single trial. A jury's failure to convict on all counts is "the best evidence of the jury's ability to compartmentalize the evidence." United States v. Baker, 10 F.3d 1374, 1387 (9th Cir. 1993) (citation omitted), *overruled on other grounds by* United States v. Nordby, 225 F.3d 1053 (2000), (reviewing a federal district court's denial of a motion to sever under the "extremely narrow" abuse of discretion standard applicable to federal severance questions); *see* Park v. California, 202 F.3d 1146, 1150, 1148 (9th Cir. 2000) (affirming the federal district court's dismissal on the merits of a prejudicial consolidation claim on habeas review, holding consolidation of two sets of crimes at petitioner's state trial did not violate his due process right where the jury acquitted him on two counts and the cases were not weak). The Park court found the "*Baker* rule distinguishes the instant case from" Bean v. Calderon, 163 F.3d 1073 (9th Cir. 1998). Park, 202 F.3d at 1150 ("In *Bean*, 'no such acquittal offered affirmative evidence of the jury's ability to assess [the evidence from the consolidated cases] separately' "), *quoting* Bean, 163 F.3d at 1086. Similarly, Medina's jury acquitted him of the assault against Francisco Medina and deadlocked on the attempted murder charge, "evidence that he was not prejudiced by the admission of evidence which was possibly irrelevant with regard to some of the counts." Park, 202 F.3d at 1150.

To prevail on his further argument that the consolidation of the "machismo" afternoon confrontation charges with the attempted rape charges likely inflamed the jury, Medina's burden was to "show that the jury was actually inflamed." Park, 202 F.3d at 1150, *citing* Featherstone, 948 F.2d

at 1503.  He fails to make any such showing.  The prosecution did not achieve a conviction on all charged counts, supporting a presumption the jury was able to compartmentalize the evidence.  Id.. Finally, Medina argues the consolidation resulted in joinder of a weak case and a strong case.  The Ninth Circuit recognizes a potential due process concern "when a poorly-supported count is combined with one that is well supported."  Park, 202 F.3d at 1150, *citing* Bean, 163 F.3d at 1084.  However, the Court of Appeal reasonably concluded the evidentiary support was not unequal, and neither case was particularly "weak," among other things because both incidents involved the presentation of eye-witness testimony.  It remains the jury's prerogative to make witness credibility determinations.

The Court of Appeal found the absence of prejudice under California's abuse of discretion standard of review "also establishes that Medina's claim that the consolidation deprived him of his Fifth Amendment right to a fair trial fails."  (Resp. Log. 1, p. 10.)  The court rejected Medina's reliance on People v. Grant, 113 Cal.App.4th 579 (2003), a case finding no abuse of the trial court's discretion in denying a motion to sever, but finding the joinder of charges denied the defendant a fair trial on one of the counts.[6]  Grant is distinguishable on the "completely different" facts, circumstances, and procedural posture of his case.[7]  (Resp. Lodg. 1, pp. 10-11.)  "The permissible decision to consolidate the two complaints did not convert the trial into a violation of Medina's Fifth Amendment right to a fair trial," because he was not prejudiced by the consolidation.  (Id.)

This Court is bound by state court determinations on state law issues.  Himes, 336 F.3d at 852; Estelle, 502 U.S. at 68.  The Court finds the state court's application of state joinder rules presents no federal constitutional concern and was objectively reasonable.  Wiggins, 539 U.S. at 520-21; Gonzalez, 341 F.3d at 903.  The Court further finds the state courts' determination objectively

---

[6] The Grant court concluded the trial court did not abuse its discretion in denying the defendant's motion to sever a burglary count from a possession of stolen computer equipment count involving a computer stolen several years earlier.  However, the court reversed Grant's burglary conviction, concluding joinder of the counts amounted to "gross unfairness" because he demonstrated a reasonable probability it affected the jury's verdicts, applying Lane, 474 U.S. at 449 and Sandoval v. Calderon, 241 F.3d 765, 771-72 (9th Cir. 2000).

[7] "Medina is not in the same position as Grant.  All the events occurred on the same day.  Also, the evidence of the incidents was cross-admissible.[] The prosecutor's argument in this case did not *impermissibly* tie the two cases together.  The only reference to a relation between the two cases made by the prosecutor was the presence of the knife in both assaults, a permissible use.  The evidence in the two crimes was equally strong.  Nor did Medina request an instruction that the evidence on the two counts was not cross-admissible."  (Resp. Lodg. 1, p. 11).

reasonable. The state court determined that the prejudice analysis disposing of Medina's abuse of discretion claim also disposes of his claim that the purported misjoinder so prejudiced him at trial as to implicate his Fifth Amendment rights. As the result involved neither objectively unreasonable findings of fact nor is the result contrary to or an unreasonable application of United States Supreme Court authority, the claim is **DENIED**.

### C.   Sufficient Evidence Supports The Kidnapping For Rape Conviction

To satisfy due process, an accused cannot be convicted "except on proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." In re Winship, 397 U.S. 358, 365 (1970). When sufficiency of the evidence is challenged on federal constitutional grounds, the "relevant question" is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[8] Jackson v. Virginia, 443 U.S. 307, 319 (1979); *see* People v. Johnson, 26 Cal.3d 557, 575-78 (1980) (California applies the Jackson standard). A federal habeas court is constrained to decide only the objective reasonableness of the state courts' factual findings on the issue.   Kidnapping to commit rape is criminalized in CAL. PEN. CODE § 209(b) (emphasis added):

> (1) Any person who kidnaps or carries away any individual to commit robbery, rape, spousal rape, oral copulation, sodomy, or sexual penetration in violation of section 289, shall be punished by imprisonment in the state prison for life with possibility of parole.
>
> (2) This subdivision shall only apply if the movement of the victim is beyond that merely incidental to the commission of, **and** increases the risk of harm to the victim over and above that necessarily present in,

---

[8] Medina argues authority "controlling" at the time of his trial entitling him to relief, Harris v. United States, 404 U.S. 1232, 1233 (1971), was not "refuted or distinguished by Respondent," quoting: "It is beyond question, of course, that a conviction based on a record lacking *any relevant evidence* as to a crucial element of the offense charged . . . violate[s] due process." (Traverse 12:24-13:6 (emphasis added).) That proposition is not only self-evident, but also inapplicable where, as here, some evidence exists to support every element of the offense charged. Moreover, the Harris case (deciding an application for bail pending appeal of a narcotics offense conviction under federal criminal rules and involving Eighth Amendment issues, reviewed by the Circuit judges under an *independent review of the merits of the application* standard, unlike AEDPA review standards) is entirely distinguishable from Medina's factual and procedural circumstances.

the intended underlying offense.[9]

The asportation element of aggravated kidnapping thus "requires movement of the victim that is not merely incidental to the commission of the underlying crime and which substantially increases the risk over and above that necessarily present in the crime . . . itself." People v. Rayford, 9 Cal.4th 1, 12-13 (1994); *see* People v. Martinez, 20 Cal.4th 225, 232-33 (1999). The two aspects of that element (*i.e.*, the scope and nature of the movement and consequent increased risk of harm) are interrelated. People v. Daniels, 71 Cal.2d 1119, 1131, n.5, 1128 (1969) (the standard prescribes no minimum distance required to satisfy the first prong); Rayford, 9 Cal.4th at 12. Medina contends there was no evidence to support a finding his movement of Stella increased her risk of harm. He supports his claim by reweighing the evidence as he would have the Court construe it. (Pet. pp. 41, 48-49.) He argues it is "highly speculative to infer that moving the complaining witness to the front of the strip mall increased the risk of potential harm, as the movement actually placed the complaining witness into Officer Stewart's line of sight." (Pet. p. 46, citing RT 401.) Speculating himself, he argues:

> If the jury believed the complaining witness when she said she was able to kick the knife away from Petitioner, and if the jury believed the police officer who said he could clearly see the two struggle as he sat across a busy street as well as another 50 feet of parking lot, then no reasonable person could believe that Petitioner had increased the risk of harm. [¶] Therefore, a conviction under Penal Code section 209(b)(1) would have to be based upon speculation. Especially when taken in conjunction with the evidence improperly admitted due to misjoinder, the evidence in support of the specific intent charges of kidnapping with the intent to commit rape was simply insufficient to support such a conviction [resulting in a denial of] his federal right of due process and his right to a fair trial.

(Pet. pp. 48-49, *citing* Jackson v. Virginia, 443 U.S. at 318-19.)

Federal habeas courts are not empowered to retry the case on the merits. The Court rejects Medina's attempt to substitute his characterization of the evidence for that of the fact-finders who convicted him. *See, e.g.*, Traverse 13:20-10. The Court similarly rejects his attempt to have the Court make credibility determinations regarding the reliability of Stella's testimony to reach a result contrary

---

[9] Statutory notes to the provision recite the California Legislature's intent in 1997: "It is the intent of the Legislature in enacting this act that the two-prong test of asportation for kidnapping, as set forth in People v. Daniels, 71 Cal.2d 1119, 1139 [1969], be applied to violations of subdivision (b) of Section 209 of the Penal Code, as amended by this act, pursuant to the decision of the California Supreme Court in People v. Rayford, 9 Cal.4th 1, 20." CAL. PEN. CODE § 209 (West 2006), quoting Section 17 of Stats. 1997, c. 817 (A.B.59).

to that upheld by the state reviewing courts.[10]  A Court of Appeal is required "to view the evidence in the light most favorable to the judgment." (Resp. Lodg. 1, p. 15.)  Medina's appellate court relied on no federal authority, but reasonably found on the state law question the "evidence adequately supports the jury's finding on the issue of asportation," in particular the increased risk component, relying on the Daniels, 71Cal.2d 1119 two-prong test, as elaborated in Martinez, 20 Cal.4th at 232-33. (Resp. Lodg. 1, p. 15.)  "This includes consideration of such factors as the decreased likelihood of detection, the danger inherent in a victim's foreseeable attempts to escape, and the attacker's enhanced opportunity to commit additional crimes." (Resp. Lodg. 1, p. 14 (citations omitted).)

> The testimony on the issue of asportation was provided by Stella [Pet. Lodg. 2, RT 607-640] and Stewart [Pet. Lodg. 2, RT 296-468].  As pertinent here, Stella testified she was walking home from work when she was attacked by Medina.  Medina pulled out a knife, grabbed Stella by the neck, and dragged her to a "dark area" near a brick wall.  Stewart testified that when he first heard Stella scream he could not see her.  When Stella screamed again, Stewart could see some people in the back corner of a strip mall where it was "pretty dark."  Stewart could not tell if the people he saw were male or female.  Numerous photos of the area were introduced into evidence.  In addition to the testimony and the photographs, the jury also was taken to the scene for a view.  [¶] . . . Whether Stella contradicted herself in other parts of her testimony is irrelevant.  The jury could infer from this evidence that the movement of Stella from the street, which was better lighted, to a dark corner of the strip mall, a distance of 40 to 50 feet, increased the risk that Stella would be injured in the attack, decreased the risk of detection, enhanced Medina's ability to commit other crimes, and was not merely incidental to the rape.

(Resp. Lodg. 1, pp. 14-15.)

That result is not contrary to nor an unreasonable application of controlling United States Supreme Court authority.  Under the highly deferential AEDPA restrictions, and applying the standard from Jackson, 443 U.S. at 318-19 on the sufficiency of evidence issue, the Court finds Medina received due process and a fair trial on the aggravated rape charge.  The testimony established he removed Stella from a sidewalk in front of a strip mall to a darker area of the parking lot.  That

---

[10] Medina complains: "The only person who testified that Petitioner was in possession of a knife was the complaining witness, a person who had a lot to lose by being caught engaged in an act of prostitution.  This fact places her veracity in question, as does some of her testimony. . . .  This is not a plausible statement. . . .The complaining witness's testimony is suspect as to its veracity, and would likely invite jury misgivings as to its truthfulness had it been analyzed separately from the evidence in support of the charges stemming from the daytime incident." (Pet. pp. 35-36.)

1  asportation not only theoretically increased her risk of harm, but also afforded Medina the opportunity
2  to bang her head against a brick wall, additional harm he actually inflicted when he moved her in
3  proximity to the wall.  The darker site provided better cover for his assault, reducing the likelihood
4  of detection, decreasing the victim's chances of escape, concealing from others' view his use of a knife
5  in the assault, and increasing the likelihood he could complete the intended rape uninterrupted.  The
6  jury was able to see for itself the asportation distance and what conditions were present at both
7  locations *vis-a-vis* the parking lot and street.

8  Ample evidence was presented for a reasonable jury to convict Medina of the kidnapping for
9  rape offense beyond a reasonable doubt in the exercise of its fact-finding prerogatives.  Accordingly,
10 the Court finds the state courts' determinations on the sufficiency of evidence issue involved neither
11 objectively unreasonable findings of fact nor is the result contrary to or an unreasonable application
12 of controlling United States Supreme Court authority.  28 U.S.C. § 2254(d).  Federal habeas relief on
13 this ground is accordingly **DENIED**.

### III.   CONCLUSION AND ORDER

For all the foregoing reasons, Medina's federal habeas Petition is **DENIED** in its entirety, and judgment shall be entered terminating this action with prejudice.

**IT IS SO ORDERED**.

DATED: August 26, 2009

*Janis L. Sammartino*
Honorable Janis L. Sammartino
United States District Judge